STATE

v.

Allen WRAY.

No. 2006–143–C.A.

Supreme Court of Rhode Island.

Feb. 23, 2007.

Diane Daigle.

Paula Rosin, Providence.

ORDER

This case came before the Supreme Court on January 30, 2007, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing arguments of counsel and reviewing the parties' memoranda, we are satisfied that cause has not been shown. Accordingly, we shall decide the appeal at this time.

The defendant, Allen Wray (defendant or Wray), appeals from a hearing justice's determination that he violated the terms of his probation, resulting in the imposition of a previously suspended twelve-year sentence for drug-related convictions.[1] At the violation hearing, two female witnesses testified that as they were walking home on the evening of January 27, 2006, defendant ran up behind them, stuck a gun in one woman's face and demanded "Give me everything you got. Give me your pocketbook." After the women handed over their belongings, including a handbag, defendant kissed one of them on the cheek and said "Thank you for participating."

He then ran down the street, jumped into the back seat of a car, and was driven off. Moments later, the complainants reported the incident to police.

Several hours later, after looking for her purloined purse at a local drinking establishment known as "Old Timers," one of the women saw defendant sitting on the porch at 40 Leah Street. The getaway car was parked across the street. The police responded to her location, and, while she was in a police cruiser on the way to 40 Leah Street, the same woman observed the getaway car traveling in the opposite direction. The car was stopped by the police; defendant was driving (without a valid driver's license), and the complainant identified him at the scene.

Two days later, the second complaining witness identified defendant from a photo array. She testified that while she was informed ahead of time that a suspect had been apprehended, she made her identification because she "just knew him by his face."

The hearing justice summarized the testimony, and he specifically noted that although some discrepancies existed between the complainants' descriptions and Wray's actual physical appearance, they nonetheless had "made good identifications." He also stated that he was "more than reasonably satisfied" that Wray had violated the terms of his probation.

On appeal, Wray argues that the descriptions provided by the complainants were inadequate and that the identification of the defendant from the photo array was unduly suggestive because the second com-

---

1. Wray pled *nolo contendere* to two counts of delivery of heroin and was sentenced to fifteen years for each count, retroactive to June 18, 1997, with three years to serve and twelve years suspended, with probation, to run concurrently with his sentence for two counts of conspiracy to violate the controlled substances act, for which he was sentenced to fifteen years for each count, retroactive to June 18, 1997, with three years to serve and twelve years suspended, with probation.

plainant knew that the suspect had been arrested *before* she made the photo identification. Additionally, defendant argues that the hearing justice improperly shifted the burden of proof to defendant when he allowed the prosecutor to ask defendant whether his neighbor would verify defendant's alibi about giving her a ride home.

This Court's "review of a hearing justice's decision in a probation-violation proceeding is limited to considering whether the hearing justice acted arbitrarily or capriciously in finding a violation." *State v. Rioux*, 708 A.2d 895, 897 (R.I.1998). "It is well settled that the burden of proof in a probation-revocation hearing is considerably lower than in a criminal case." *State v. Sylvia*, 871 A.2d 954, 957 (R.I.2005). Moreover, "[k]eeping the peace and remaining on good behavior are conditions of probation[,]" and the purpose of a probation-revocation proceeding is for the trial justice to determine whether these conditions have been violated. *State v. Waite*, 813 A.2d 982, 985 (R.I.2003). Consequently, the "reasonably satisfied standard * * * should be applied to whether defendant maintained the conditions of his probation" and not to the issue of defendant's guilt with respect to the new charges. *Id.*

After reviewing the testimony in this case, the hearing justice performed his task of judging the credibility of the witnesses, and he was reasonably satisfied that the evidence supported a finding that defendant was a violator. The fact that the complainants did not describe the defendant with exacting precision is not determinative; the hearing justice found that they had made good identifications, and we perceive no basis in the record for rejecting this finding.

We note that defendant failed to object to the photographic identification by the second complaining witness. Based on this Court's long-standing rule that we will not consider an issue that was not raised before the hearing justice, we deem this issue waived. *State v. Texter*, 896 A.2d 40, 43 (R.I.2006).

Finally, concerning the defendant's argument that the state shifted the burden of proof onto the defendant when the prosecutor inquired about the availability of his neighbor to verify the defendant's alibi, we note that a probation violation hearing is a civil matter, not a criminal proceeding, and therefore the defendant is not guaranteed "the 'full panoply of rights' normally guaranteed to defendants in criminal proceedings." *State v. Summerour*, 850 A.2d 948, 952 (R.I.2004) (quoting *State v. Crudup*, 842 A.2d 1069, 1073 (R.I.2004)). It is clear in this instance that the hearing justice based his determination of violation on the testimony of the complaints and not on whether the defendant had an alibi. Thus, to the extent that the admission of the prosecutor's question was erroneous, it was harmless.

Accordingly, we deny and dismiss the defendant's appeal, and we summarily affirm the judgment of the Superior Court, to which we return the papers in the case.