STATE

v.

John FEOLE.

No. 98–419–C.A.

Supreme Court of Rhode Island.

March 14, 2000.

Virginia M. McGinn, William J. Ferland, Aaron L. Weisman, Providence, for Plaintiff.

Janice M. Weisfeld, Paula Rosin, Providence, for Defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

The propriety of limiting a defense attorney's attempted cross-examination of two prosecution witnesses and the admission of hearsay evidence are the focus of this appeal. The defendant, John Feole (Feole), appeals from a judgment of conviction for extortion in violation of G.L. 1956 § 11–42–2 and usury in violation of G.L.1956 §§ 6–26–3 and 6–26–6. Following a prebriefing conference, we ordered the parties to show cause why the appeal should not be resolved summarily. Because no cause has been shown, we proceed to do so.

During Feole's jury trial, he testified that he lent money to the victim, Francesco Rocchio (Rocchio), on three different occasions. According to Feole, this accumulation of debt started with a loan of $2,900 to help Rocchio pay his taxes, after which, Feole testified, he lent Rocchio another $1,500 to help him buy a piece of equipment for his wife's business. He said he thought this second loan would expedite the return of the original loan. After that, Feole testified, he lent Rocchio an additional $14,000 to invest in a nightclub. According to Feole, Rocchio never repaid any of these loans. He also testified that he threatened Rocchio with legal action, which in turn prompted Rocchio to call the police and to fabricate a charge of extortion against him. In defense to the extortion charge, Feole testified that he never threatened the victim or anyone in his family with physical harm. Moreover, he testified that he never asked Rocchio for any interest on these loans because they were old friends.

In contrast, Rocchio testified that even though he owed Feole only $4,100, he had paid him nearly $70,000 because Feole threatened to inflict bodily harm upon him and his family. He testified that he originally borrowed $3,800 from Feole to defray the cost of some machinery for his wife's jewelry business, and that this loan was supposed to cost him $300 in interest, for a total of $4,100. Rocchio further testified that Feole never specified any time period for him to repay the loan, but agreed that he could repay him in "a couple of weeks." Rocchio stated that he was prepared to pay Feole back after six weeks, but at that point Feole refused, telling him that $4,100 would not satisfy his boss. Rocchio testified that to satisfy Feole's boss he had to pay close to $2,000 in interest on top of the $4,100. He also

testified that for each week he did not pay, Feole added $100 per $1,000 of the unpaid loan amount.

With the debt growing rapidly, Rocchio testified that he made partial payments to Feole on a regular basis. He asserted that he borrowed money from his brothers and his wife to pay off some of the debt. He also testified that he made payments from a workers' compensation settlement. According to Rocchio, he received $34,000 from the settlement and paid most of it to Feole in two payments of $5,000 and $27,-000. Nevertheless, these payments still were not enough to satisfy Feole. As a result, Rocchio sold some property in Italy to his brother John for approximately $20,-000, the proceeds of which he also gave to Feole. Despite this payoff, Rocchio testified, his original loan of $3,800 still was not considered satisfied.

Rocchio also testified that Feole eventually requested $150,000 from him, and this demand forced him to try to mortgage his house. However, he failed to get a loan from the bank to make this payment because he did not have enough collateral. According to Rocchio, this prompted threats of bodily harm from Feole. He said his only option at this point was to file a complaint against Feole with the police.

Feole vehemently denied Rocchio's accusations and testified that the $150,000 represented the total amount of money Rocchio had borrowed to cover his debts resulting from gambling, drugs, and a failed business. Feole intimated that Rocchio used the Johnston Soccer Club, which he owned, as a front for his illegal activities.

During the trial, the state presented testimony from seven witnesses, relying primarily upon the testimony of Rocchio, Rocchio's brother, John Rocchio, and Sergeant Doherty of the Rhode Island State Police. The latter two helped corroborate Rocchio's version of events. For example, Sergeant Doherty testified that the state police conducted an investigation, which included taped phone conversations between Rocchio and Feole, to confirm the victim's complaint. The tapes corroborated Rocchio's assertion that Feole threatened him with bodily harm. Indeed, the tapes revealed that Feole told Rocchio to "go buy a casket" when he could not meet one of Feole's payment demands.

After the jury returned a guilty verdict on both counts, the court denied Feole's motion for a new trial and he filed this appeal.

Feole raises two issues on appeal. First, he contends that the trial justice erred when he limited his cross-examination of the state's witnesses. Second, he contends that the trial justice erred when he allowed hearsay testimony by Sergeant Doherty and John Rocchio to be admitted in evidence.

### Limitation of Cross–Examination

Feole presented a theory at trial that Rocchio had a gambling and drug problem that forced him into debt. Feole contended that Rocchio concocted a tale of extortion to cover up his gambling losses and to protect him from his other creditors. Thus, in order to prove his innocence, Feole claimed, he needed to inquire on cross-examination about Rocchio's gambling and drug activities, including his alleged activities at the Johnston Soccer Club. On appeal, Feole now contends that the trial justice erred when he restricted his opportunities on cross-examination to prove this theory.

More specifically, Feole asserts that the trial justice erred when he limited his attorney's attempted cross-examination of Sergeant Doherty and John Rocchio concerning Rocchio's gambling. Second, Feole argues that the trial justice erred when he limited the cross-examination about Rocchio's activities at the Johnston Soccer Club. Third, Feole contends that the trial justice erred when he precluded testimony concerning whether Feole collected disability benefits while he was working at his wife's jewelry shop.

Fourth, Feole argues that the trial justice erred when he sustained the prosecution's objection to allowing the bank records of Rocchio and his wife to be admitted in evidence.

"This Court has previously concluded that the exercise of discretion by the trial justice in limiting the scope of cross-examination will not be disturbed absent a clear abuse of that discretion." *State v. Walsh,* 731 A.2d 696, 698 (R.I. 1999) (per curiam) (citing *State v. Bettencourt,* 723 A.2d 1101, 1110 (R.I.1999)). Although "a criminal defendant is constitutionally guaranteed the right to an effective cross-examination of the prosecution's witnesses * * * the scope of cross-examination is subject to limitation by the trial justice's exercise of his or her sound discretion." *State v. Brown,* 709 A.2d 465, 473 (R.I.1998); *see also State v. Bettencourt,* 723 A.2d 1101 (R.I.1999); *State v. Anthony,* 422 A.2d 921 (R.I.1980). "The trial justice also has wide discretion in determining the appropriate order of proof and it [is] well within his discretion to limit cross-examination to that which was addressed on direct examination." *Walsh,* 731 A.2d at 698 (citing *State v. Lassor,* 555 A.2d 339, 351 (R.I.1989)).

We have further held that questions that " 'are irrelevant or offer no probative value' " surpass the legitimate limits of cross-examination. *Bettencourt,* 723 A.2d at 1110. Moreover, "[i]t is well settled that questions pertaining to the relevancy of evidence are left to the sound discretion of the trial justice." *State v. Cote,* 691 A.2d 537, 543 (R.I.1997) (citing *State v. Tempest,* 651 A.2d 1198, 1215 (R.I. 1995)). Therefore, "[t]his court will not reverse a trial justice's determination of relevancy absent a showing that the trial justice has clearly abused his or her discretion." *Id.*

We hold that the trial justice did not abuse his discretion when he limited the defense's attempted inquiry on cross-examination into whether the state police investigated the Johnston Soccer Club for illegal activity because this topic was not broached on direct examination. *See Walsh,* 731 A.2d at 698 (defense not allowed to raise collateral issues to undermine witness's credibility). Here the justice allowed the defense to establish that the victim and defendant frequented the club socially. However, because the prosecution did not question Sergeant Doherty about the Johnston Soccer Club, the trial justice did not abuse his discretion when he limited the defense's cross-examination questions about Rocchio's alleged activities at the club.

Similarly, the trial justice did not abuse his discretion when he limited the defense's inquiry on cross-examination into whether the victim gambled or used drugs with the money he borrowed. *See Cote,* 691 A.2d at 543 (holding that trial justice has wide discretion to determine relevancy of evidence). In the case at bar, Feole tried to tarnish the victim's character and credibility by labeling him a gambler with a drug habit. This theory rested on the notion that Rocchio used the money he had borrowed to support his vices. But the trial justice could have determined that this information was irrelevant to the issues at trial and that it exceeded the scope of the direct examination. Because the issues in this case centered upon Feole's dealings with the victim and his conduct in attempting to obtain repayment of the borrowed sums and not upon what Rocchio did with the money that he borrowed, the trial justice did not abuse his discretion in limiting Feole's attempt to inquire into these collateral areas on cross-examination.

Furthermore, the trial justice did not abuse his discretion when he precluded Rocchio's wife from testifying about whether he worked for her business while he was collecting disability. "Determinations on the relevancy of evidence offered at trial are in the sound discretion of the trial justice." *State v. Marini,* 638 A.2d 507, 516 (R.I.1994). This evidence had

nothing to do with the extortion charges against Feole. Thus, the trial justice did not abuse his discretion when he sustained the state's objection to this line of inquiry.

▮ Last, the trial justice did not abuse his discretion when he precluded the defense from introducing the bank records of the victim and his wife as a full exhibit. *See Cote*, 691 A.2d at 543. In offering these records into evidence, Feole was attempting to impeach the victim through the use of collateral evidence in violation of Rule 608(b) of the Rhode Island Rules of Evidence. Nevertheless, the trial justice allowed the defense extensive latitude in questioning Rocchio's wife about the contents of the records. Thus, he did not preclude Feole from using these records to establish part of the defense theory.

### Hearsay

Feole also contends that certain portions of the testimony of Sergeant Doherty and John Rocchio constituted hearsay and should not have been admitted. Under Rule 801(c) of the Rhode Island Rules of Evidence, hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." To preserve this evidentiary issue on appeal, however, Feole was required to show us that he objected specifically to this evidence at trial and that he stated the grounds for his objection. *See Brown*, 709 A.2d at 477 (holding that "a trial justice's claimed errors that are not specifically objected to at trial * * * are not preserved for consideration by this court on appeal").

▮ In the case at bar, Feole specifically raised hearsay objections to proffered trial testimony of these two witnesses only on two occasions. Thus, these are the only instances that Feole is allowed to raise on appeal because all other hearsay objections to these witnesses' testimony have been waived by Feole's failure to raise them at trial. In the first instance, Feole objected when the prosecution asked Sergeant Doherty if Rocchio had told him what would

happen if he resisted Feole's repayment demands. The court overruled the objection, but later clarified that Sergeant Doherty's answer was not probative concerning whether Feole actually threatened Rocchio. Instead, the Court stated, this response only verified what Rocchio had indicated to Sergeant Doherty during his investigation. Feole himself confirmed this when his counsel asked Sergeant Doherty, "is it fair to say that you're not attesting to the truth of what Frank Rocchio told you, correct?" and the sergeant replied, "I'm only going by what he told me, sir." Subsequently, the trial justice clarified this point when he asked Sergeant Doherty "[b]ut you didn't know what [Rocchio] was telling you was the truth?" and Sergeant Doherty replied "at that time, that's correct." From this exchange, we infer that this testimony was not offered to prove the truth of the matter asserted and that, in any event, subsequent testimony clarified that what Rocchio told Sergeant Doherty about Feole was not offered for the truth of those assertions but to show that Rocchio understood that he was being extorted by Feole and that he had reported this activity to the police. In the second instance, Feole objected on hearsay grounds when the prosecution elicited from Rocchio that Feole had told him "his boss" would not agree to reduce the amounts owed. Similarly, we infer that this testimony was not offered to prove the truth of the matter asserted, but instead to prove that Rocchio understood that Feole was extorting him, regardless of whether Feole's "boss" had any actual involvement in refusing to reduce the amounts alleged owed. Therefore, the trial justice did not err in allowing this evidence.

### Conclusion

For these reasons, we affirm the defendant's judgment of conviction and deny the appeal.